# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| STATE OF ARIZONA; STATE OF WASHINGTON; STATE OF MINNESOTA; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF HAWAIʻI; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR OF THE COMMONWEALTH OF KENTUCKY *ex rel.* ANDY BESHEAR; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; JESSICA SHIRLEY, Chair of the Pennsylvania Energy Development Authority; STATE OF RHODE ISLAND; STATE OF VERMONT; WISCONSIN ECONOMIC DEVELOPMENT CORPORATION, <br><br> Petitioners, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, <br><br> Respondents. | Case No. 25 - 1218 |

## PROTECTIVE PETITION FOR REVIEW

In accordance with 42 U.S.C. § 7607(b)(1), Federal Rule of Appellate Procedure 15, and D.C. Circuit Rule 15, the above-captioned Petitioners file this

protective petition for review of the U.S. Environmental Protection Agency's ("EPA" or "Agency") unpublished final action terminating the Solar for All ("SFA") grant program. The EPA justified its decision to terminate the SFA program on the grounds that Section 60002 of the One Big Beautiful Bill Act ("H.R. 1"), Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (July 4, 2025), "repeal[ed] the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. [§] 7434, and rescind[ed] unobligated amounts to carry out Section 134." Letter from Office of Mission Support, Env't Prot. Agency (Aug. 7, 2025) (attached as **Exhibit A**). As a result, the EPA concluded that it "no longer possesse[d] either the substantive legal authority or the financial appropriations needed to continue implementation, oversight[,] or monitoring for waste, fraud, or abuse" of the SFA program. *Id.*

This petition is protective. Petitioners believe that the district courts have jurisdiction and are a proper forum to review challenges to the EPA's termination of the SFA program. Accordingly, on October 16, 2025, Petitioners filed a complaint in the U.S. District Court for the Western District of Washington challenging the EPA's decision. Compl., *Arizona v. EPA*, No. 2:25-cv-2015 (W.D. Wash. Oct. 16, 2025), ECF No. 1 (attached as **Exhibit B**). The complaint alleges that the EPA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the U.S. Constitution by rescinding obligated funds even though H.R. 1's rescission

applied to only *unobligated* funds.  Ex. B ¶¶ 131-76.  Petitioners file this action only as a precautionary measure to preserve their right to judicial review in the event that this Court is deemed the proper forum.[1]

Dated:   October 20, 2025                          Respectfully submitted,

**BRIAN L. SCHWALB**                  **KRISTIN K. MAYES**
Attorney General for the District of      Attorney General of Arizona
Columbia

By: */s/ Ashwin P. Phatak*                  By: */s/ Joshua D. Bendor*
CAROLINE S. VAN ZILE                 JOSHUA D. BENDOR
*Solicitor General*                              *Solicitor General*
ASHWIN P. PHATAK                       MARY M. CURTIN
*Principal Deputy Solicitor General*      *Senior Litigation Counsel*
LAUREN M. MARKS                        2005 N. Central Ave
LAUREN CULLUM                           Phoenix, Arizona 85004
*Special Assistant Attorneys General*   Joshua.Bendor@azag.gov
BRIAN CALDWELL                           Mary.Curtin@azag.gov
*Senior Assistant Attorney General*
(202) 442-9807                               *Counsel for the State of Arizona*
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
Caroline.VanZile@dc.gov
Ashwin.Phatak@dc.gov
Lauren.Marks@dc.gov
Lauren.Cullum@dc.gov
Brian.Caldwell@dc.gov

*Counsel for the District of Columbia*

---

[1]     Last month, for the first time, the EPA raised 42 U.S.C. § 7607(b)(1) in district court litigation challenging its non-regulatory, administrative actions.  *See* Mot. to Dismiss at 18-20, *California v. United States*, No. 4:25-cv-4966 (N.D. Cal. Sep. 19, 2025), ECF No. 118 (arguing that Section 7607(b)(1) applies to a suit challenging federal actions against California's Clean Air Act preemption waivers).

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ C. L. Junine So*
C. L. JUNINE SO
*Assistant Attorney General*
Environmental Protection Division
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
Junine.So@atg.wa.gov

*Counsel for the State of Washington*

**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Ryan Pesch*
RYAN PESCH
CAT RIOS-KEATING
*Special Assistant Attorneys General*
BRIAN CARTER
*Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Ryan.Pesch@ag.state.mn.us
Catherine.Rios-Keating@ag.state.mn.us
Brian.Carter@ag.state.mn.us

*Counsel for the State of Minnesota*

**ROB BONTA**
Attorney General of California

By: */s/ Marie Elizabeth Logan*
MARIE ELIZABETH LOGAN
REBECCA HUNTER
DYLAN C. REDOR
THEODORE A. MCCOMBS
*Deputy Attorneys General*
ABIGAIL BLODGETT
MYUNG PARK
*Supervising Deputy Attorneys General*
1515 Clay Street
Oakland, CA 94612
Marie.Logan@doj.ca.gov
Rebecca.Hunter@doj.ca.gov
Dylan.Redor@doj.ca.gov
Abigail.Blodgett@doj.ca.gov
Myung.Park@doj.ca.gov

*Counsel for the State of California*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM
*Assistant Deputy Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Carrie.Noteboom@coag.gov

*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Jill Lacedonia*
JILL LACEDONIA
*Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

*Counsel for the State of Connecticut*


**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Katharine Roller*
KATHARINE ROLLER
*Complex Litigation Counsel*
ELIZABETH B. SCOTT
*Assistant Attorney General*
115 LaSalle Street
Chicago, IL 60603
Katharine.Roller@ilag.gov

*Counsel for the State of Illinois*


**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY
*Special Assistant to the Attorney General*
KALIKOʻONĀLANI D. FERNANDES
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
David.D.Day@hawaii.gov
Kaliko.D.Fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


**OFFICE OF THE GOVERNOR**
*ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of
the Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. TRAVIS MAYO
*General Counsel*
TAYLOR PAYNE
*Chief Deputy General Counsel*
LAURA C. TIPTON
*Deputy General Counsel*
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
LauraC.Tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
Attorney General of Maine

By: */s/ Emma Akrawi*
EMMA AKRAWI
*Assistant Attorney General*
6 State House Station
Augusta, ME 04333
Emma.Akrawi@maine.gov

*Counsel for the State of Maine*


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Katherine Dirks*
KATHERINE DIRKS
*Chief State Trial Counsel*
1 Ashburton Place
Boston, MA 02108
Katherine.Dirks@mass.gov

*Counsel for the Commonwealth of Massachusetts*


**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
*Assistant Attorney General*
200 Saint Paul Place
Baltimore, MD 21202
SGoldstein@oag.state.md.us

*Counsel for the State of Maryland*


**DANA NESSEL**
Attorney General of Michigan

By: */s/ Elizabeth Morrisseau*
ELIZABETH MORRISSEAU
*Assistant Attorney General*
Environment, Natural Resources, and
Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909
MorrisseauE@michigan.gov

*Counsel for the State of Michigan*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

By: */s/ Daniel Resler*
DANIEL RESLER
LAUREN E. VAN DRIESEN
JACK A. VENTURA
*Deputy Attorneys General*
33 Washington Street, Ninth Floor
Newark, NJ 07101
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*


**LETITIA JAMES**
Attorney General of New York

By: */s/ Matthew Eisenson*
MATTHEW EISENSON
KELSEA SUAREZ
*Assistant Attorneys General*
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005
Matthew.Eisenson@ag.ny.gov

*Counsel for the State of New York*


**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ J. Spenser Lotz*
J. SPENSER LOTZ
*Assistant Attorney General*
Environmental Protection Bureau
201 Third Street NW, Suite 300
Albuquerque, NM 87102
SLotz@nmdoj.gov

*Counsel for the State of New Mexico*


**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD
*Chief Deputy Attorney General*

By: /s/ Daniel T. Wilkes
DANIEL T. WILKES
*Assistant Deputy Attorney General*
P.O. Box 629
Raleigh, NC 27602
DWilkes@ncdoj.gov

*Counsel for the State of North Carolina*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Coby Howell*
COBY HOWELL
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
Coby.Howell@doj.oregon.gov

*Counsel for the State of Oregon*

**MICHAEL A. BRAYMER**
Chief Counsel
Department of Environmental Protection

By: */s/ Michael J. Heilman*
MICHAEL J. HEILMAN
*Litigation Coordinator*
Department of Environmental Protection
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
MHeilman@pa.gov

*Counsel for Jessica Shirley, Chair of the
Pennsylvania Energy Development
Authority*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Nicholas M. Vaz*
NICHOLAS M. VAZ
*Special Assistant Attorney General*
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
NVaz@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Ryan Kane*
RYAN KANE
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
Ryan.Kane@vermont.gov

*Counsel for the State of Vermont*

**WISCONSIN ECONOMIC DEVELOPMENT CORPORATION**

By: */s/ Jennifer H. Campbell*
JENNIFER H. CAMPBELL
*Chief Legal Officer*
2352 S. Park Street, Suite 303
Madison, WI 53713
Jennifer.Campbell@wedc.org

*Counsel for Wisconsin Economic Development Corporation*

# CERTIFICATE OF SERVICE

On October 20, 2025, this protective petition for review was served by certified mail, return receipt requested, on:

**Lee Zeldin**
Administrator of the Environmental Protection Agency
Office of the Administrator, Mail Code 1101A
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

**Pamela Jo Bondi**
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

**Jeanine Ferris Pirro**
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20004

*/s/ Ashwin P. Phatak*
ASHWIN P. PHATAK

# Exhibit A

Sample letter from the Office of Mission Support at the Environmental Protection Agency sent to all recipients of Solar for All funds (Aug. 7, 2025)



August 7, 2025


<u>MEMORANDUM</u>

**SUBJECT:**   Termination of EPA Assistance Agreement 5H-84088001 under 2 CFR 200.340

**FROM:**   Devon Brown, EPA Award Official

**TO:**   Richard Jackson, Director
Department Of Energy And Environment

The purpose of this communication is to notify you that, pursuant to the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21 (July 4, 2025), the U.S. Environmental Protection Agency (EPA) is hereby terminating Assistance Agreement No. 5H-84088001 awarded to Department Of Energy And Environment. Section 60002 of OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134. The repeal of the grant appropriations in CAA 134(a)(1)-(3), coupled with the rescission of the administrative appropriation in section 134(a)(4), effectively and completely terminated the statutory authority and all appropriations related to Solar for All. As both the grant appropriations and the EPA's administrative cost appropriation are rescinded, the Agency no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these grants or of Solar for All. Thus, any attempt to continue the program's administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible. The EPA has been weighing options for the future of the Solar for All program and has made the decision to terminate the SFA program and existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients. Congress has made its intent clear—via a repeal of the statutory authorization and all appropriated funding for the program and the administrative burdens of implementing and overseeing the program—that the SFA program is no longer to operate.

The EPA recognizes that program participants may have begun to rely on funds made available through the Solar for All program and have in some instances made preliminary budgets, projections, outlays, and staffing decisions. Due to the early nature of such expenditures, we expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants and discussed below.

The process for closeout is generally outlined in 2 CFR 200.344. EPA is clarifying what reports are required and what reports are waived below. Other requirements are still in effect if applicable to your grant.

EPA is requiring the following closeout reports due within 120 days of closeout (2 CFR 200.344a:)
- Final Federal Financial Report, SF-425
- Final Technical Report
- Other programmatic reports identified in your terms and conditions

As part of this termination, EPA is waiving the following closeout reports:
- Property Report, SF-428
- Final Minority Business Enterprise/Woman Business Enterprise Utilization Under Federal Grants and Cooperative Agreements, EPA Form 5700-52A

The recipient may request payment from the Automated Standard Application Payments (ASAP) system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan. Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g).

Also, per 2 CFR 200.472, a recipient may use grant funds to properly closeout their grant including reasonable and necessary costs that might occur after the date of this memo. If the recipient drew down funds from ASAP for costs beyond the termination date or for costs that exceed the amount necessary to properly closeout their grant, the recipient must contact RTPFC at rtpfc-grants@epa.gov for instructions on how to return the excess funds.

The EPA Grants Management Office will issue an amendment to the agreement to document the termination.

If you wish to dispute this termination decision, the Disputes Decision Official (DDO), molina.michael@epa.gov, must receive the Dispute no later than 30 calendar days from the date this termination notice is electronically sent to you. Disputes must be sent electronically by email to the DDO, with a copy to the EPA Award Official, brown.devon@epa.gov within the 30-day period stated above. The Dispute submitted to the DDO must include: (1) A copy of the disputed Agency Decision; (2) A detailed statement of the specific legal and factual grounds for the Dispute, including copies of any supporting documents; (3) The specific remedy or relief you seek under the Dispute; and (4) The name and contact information, including email address, of your designated point of contact for the Dispute. *See* 2 CFR 1500.15

The requirements on post-closeout adjustments and continuing responsibilities, including audit and record retention requirements, at 2 CFR 200.345 remain in effect.


cc: Alison Hanlon, EPA Grant Specialist
    Lydia Kidane, EPA Project Officer
    Thomas Bartholomew, Grantee Program Manager

# Exhibit B

Complaint, *Arizona v. EPA*, No. 2:25-cv-2015 (W.D. Wash. Oct. 16, 2025)

1

2

3

4

5

6
                    **UNITED STATES DISTRICT COURT**
                    **WESTERN DISTRICT OF WASHINGTON**

7

8    STATE OF ARIZONA, STATE OF              No. _____
     WASHINGTON, STATE OF
9    MINNESOTA, DISTRICT OF
     COLUMBIA, STATE OF CALIFORNIA;
10   STATE OF COLORADO; STATE OF             **COMPLAINT**
     CONNECTICUT; STATE OF HAWAI'I;
11   STATE OF ILLINOIS; OFFICE OF THE
     GOVERNOR ex rel. Andy Beshear, in his
12   official capacity as Governor of the
     Commonwealth of Kentucky; STATE OF
13   MAINE; STATE OF MARYLAND;
     COMMONWEALTH OF
14   MASSACHUSETTS; STATE OF
     MICHIGAN; STATE OF NEW JERSEY;
15   STATE OF NEW MEXICO; STATE OF
     NEW YORK; STATE OF NORTH
16   CAROLINA; STATE OF OREGON;
     JESSICA SHIRLEY, Chair of the
17   Pennsylvania Energy Development
     Authority; STATE OF RHODE ISLAND;
18   STATE OF VERMONT; and WISCONSIN
     ECONOMIC DEVELOPMENT
19   CORPORATION,

20                          Plaintiffs,

21          v.

22   U.S. ENVIRONMENTAL PROTECTION
     AGENCY; and LEE ZELDIN, in his
23   official capacity as Administrator of the
     U.S. Environmental Protection Agency,
24
                            Defendants.
25

26

COMPLAINT – No.                          1              ATTORNEY GENERAL OF WASHINGTON
                                                            Environmental Protection Division
                                                              800 Fifth Avenue STE 2000
                                                                 Seattle, WA 98104
                                                                   206-464-7744

## I.    INTRODUCTION

1.    The United States Environmental Protection Agency ("EPA") has unilaterally and illegally terminated a multi-billion-dollar program designed to bring low-cost distributed solar energy to over 900,000 households in low-income and disadvantaged communities.

2.    The Plaintiffs ("States") bring this action to challenge EPA's abrupt termination of this program, known as "Solar for All" ("SFA" or "SFA Program"). In 2022, Congress amended the Clean Air Act to establish a program called the "Greenhouse Gas Reduction Fund." Public Law 117-169, Sec. 60103, 136 Stat. 2065-66 (formerly codified at 42 U.S.C. § 7434 (2024), hereinafter "Clean Air Act Section 134"). Congress directed EPA to make competitive grants to states, local governments, Tribes, and non-profits "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies, including distributed technologies on residential rooftops, and to carry out other greenhouse gas emission reduction activities." Clean Air Act Section 134(a)(1). Congress appropriated $7 billion to fund these grants, and directed that the funding be obligated by September 30, 2024.

3.    On April 22, 2024, after a rigorous application process, EPA announced it had selected sixty qualified recipients ("SFA Recipients") and awarded the $7 billion appropriated by Congress to carry out the SFA Program. Plaintiffs were SFA Recipients selected to partner with EPA and carry out Congress's mandate.

4.    By August 16, 2024, EPA had obligated all of the $7 billion appropriated for the SFA Program, in accordance with Congress's statutory requirement.

5.    Plaintiffs executed Assistance Agreements with EPA and received their awards in their Automated Standard Application for Payments ("ASAP") accounts. Plaintiffs got to work building out their state SFA programs and doing their part to fulfill

COMPLAINT – No.                                    2

1  Congress's mandate to make solar energy accessible to all, including low-income and other

2  disadvantaged communities.

3      6.      On July 4, 2025, President Trump signed the "One Big Beautiful Bill Act,"

4  or H.R. 1, into law. In H.R. 1, Congress repealed Section 134 of the Clean Air Act. In H.R.

5  1, Congress expressly rescinded only "the *unobligated* balances of amounts made available

6  to carry out [Section 134] (as in effect on the day before the date of enactment of this Act)."

7  Pub. L. 119-21, § 60002, 139 Stat. 72, 154 (2025) (emphasis added).

8      7.      Congress did not, however, rescind any funds that had been obligated by "the

9  day before the date of enactment" of H.R. 1, which is July 3, 2025. All of the funds awarded

10  to Plaintiffs were obligated by August 16, 2024, *long before* H.R. 1's enactment. Thus, H.R.

11  1 did not affect Plaintiffs' obligated funds, nor did it affect the continuation of EPA's

12  administration of the state SFA programs already funded and underway.

13      8.      Upon information and belief, on or before August 7, 2025, Defendants

14  erroneously interpreted H.R. 1 to eliminate the statutory basis for the SFA Program ("H.R. 1

15  Interpretation") and, based on that interpretation, decided to terminate the entire SFA

16  Program ("Program Termination Directive"). On August 7, 2025, for the first time, EPA

17  Administrator Lee Zeldin publicly announced on X and on EPA's YouTube channel that

18  "we are ending Solar for All for good!"

19      9.      That same day, EPA issued a substantively identical termination

20  memorandum to each SFA Recipient ("Termination Memorandum"), including Plaintiffs,

21  explaining that it "has made the decision to terminate the SFA program and existing grants

22  because EPA no longer has a statutory basis or dedicated funding to continue administering

23  and overseeing the program." *See, e.g.*, Memorandum from Devon Brown, EPA Official, to

24  Amy Wheeless, Federal Policy and Program Alignment Manager, Washington State

25  Department of Commerce (Aug. 7, 2028), a true and accurate copy of which is attached

26  hereto as Exhibit A.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1        10.     Upon information and belief, on or after August 7, 2025, EPA also directed

2  staff to immediately commence deobligation of all remaining SFA funds ("Deobligation

3  Directive"). Within one week of the Program Termination Directive, Defendants illegally

4  and arbitrarily liquidated and removed from Plaintiffs' ASAP accounts approximately 90%

5  of the funds that were obligated to Plaintiffs before August 16, 2024, despite the fact that

6  H.R. 1 explicitly limited rescission to funds that were unobligated as of July 3, 2025.

7        11.     As set forth below, EPA's H.R. 1 Interpretation is contrary to H.R. 1's plain

8  meaning, and the Program Termination Directive was therefore unlawful, arbitrary and

9  capricious, in excess of Defendants' statutory authority, and in violation of the

10  Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C). And because the Executive

11  Branch has no authority to unilaterally terminate a program that Congress has funded,

12  Defendants' actions are also unconstitutional.

13        12.     Plaintiffs have been and will continue to be harmed by Defendants' executive

14  overreach. By arbitrarily terminating a program in which Plaintiffs participated and which

15  was expected to bring substantial benefits to Plaintiffs and their residents, Defendants have

16  illegally eliminated Plaintiffs' ability to participate in and benefit from the SFA Program.

17        13.     Plaintiffs respectfully request this Court: 1) declare that the H.R. 1

18  Interpretation, the Program Termination Directive, and the Deobligation Directive are

19  unlawful and should be vacated; 2) grant injunctive relief prohibiting EPA from

20  implementing the H.R. 1 Interpretation, Program Termination Directive, and Deobligation

21  Directive; and 3) order EPA to reinstate the SFA Program and perform the necessary

22  administrative support to the Program and SFA Recipients.

23  / / /

24  / / /

25  / / /

26  / / /

COMPLAINT – No.             4

|     |     |
| --- | --- |
| 1   | **II.    PARTIES** |
| 2   | **A.    Plaintiffs** |
| 3   | 14.    The State of Arizona is a sovereign state of the United States of America. |
| 4   | Arizona is represented by Attorney General Kristin K. Mayes, the State's chief law |
| 5   | enforcement officer. |

         II.    PARTIES

**A.    Plaintiffs**

        14.    The State of Arizona is a sovereign state of the United States of America.
Arizona is represented by Attorney General Kristin K. Mayes, the State's chief law
enforcement officer.

        15.    The State of Washington is a sovereign state of the United States of America.
Washington is represented by Attorney General Nicholas W. Brown, the State's chief legal
officer.

        16.    The State of Minnesota is a sovereign state of the United States of America.
Minnesota is represented by Attorney General Keith Ellison, the State's chief legal officer.

        17.    The District of Columbia is a municipal corporation organized under the
Constitution of the United States. It is empowered to sue and be sued, and it is the local
government for the territory constituting the permanent seat of the federal government. The
District is represented by and through its chief legal officer, Attorney General
Brian L. Schwalb. The Attorney General has general charge and conduct of all legal
business of the District and all suits initiated by and against the District and is responsible
for upholding the public interest. D.C. Code. § 1-301.81.

        18.    The State of California is a sovereign state of the United States of America.
California is represented by Attorney General Rob Bonta, the State's chief law enforcement
officer.

        19.    The State of Colorado is a sovereign state of the United States of America.
Colorado is represented by Attorney General Philip J. Weiser, the State's chief legal officer.

        20.    The State of Connecticut is a sovereign state of the United States of America.
Connecticut is represented by Attorney General William Tong, the State's chief legal
officer.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    21.    The State of Hawai'i is a sovereign state of the United States of America.

2    Hawai'i is represented by Attorney General Anne Lopez, the State's chief legal officer and

3    chief law enforcement officer.

4    22.    Plaintiff State of Illinois, represented by and through its Attorney General

5    Kwame Raoul, is a sovereign state of the United States of America. Attorney General Raoul

6    is the chief legal officer for the State of Illinois and is authorized to pursue this action under

7    Illinois law. *See* 15 ILCS 205/4.

8    23.    Plaintiff Office of the Governor, *ex rel.* Andy Beshear, brings this suit in his

9    official capacity as Governor of the Commonwealth of Kentucky. The Kentucky

10    Constitution makes the Governor the Chief Magistrate with the "supreme executive power

11    of the Commonwealth," Ky. Const. § 69, and gives the Governor, and only the Governor,

12    the duty to "take care that the laws be faithfully executed," *id.* § 81; *Beshear v. Bevin*, 498

13    S.W.3d 355, 369 (Ky. 2016) (citing Ky. Const. § 81). Under Kentucky statute, the Governor

14    is the head of his General Cabinet and his Executive Cabinet. Ky. Rev. Stat. §§ 11.060,

15    11.065. The Governor's Executive Cabinet consists of the Secretaries of executive branch

16    cabinets, including the Kentucky Energy and Environment Cabinet that is the Solar for All

17    grantee for Kentucky (Grant Number (FAIN) 84088701).

18    24.    The State of Maryland is a sovereign state of the United States of America.

19    Maryland is represented by Attorney General Anthony G. Brown, who is the chief law

20    enforcement officer of the state.

21    25.    The State of Maine is a sovereign state in the United States of America.

22    Maine is represented by Attorney General Aaron Frey, who is the chief law enforcement

23    officer of Maine.

24    26.    The Commonwealth of Massachusetts is a sovereign state of the United

25    States of America. Massachusetts is represented by Attorney General Andrea Joy Campbell,

26    the Commonwealth's chief legal officer.

1       27.    The State of Michigan is a sovereign state of the United States of America.

2 Michigan is represented by Attorney General Dana Nessel, who is the chief law

3 enforcement officer of Michigan.

4       28.    The State of New Jersey is a sovereign state of the United States of America.

5 New Jersey is represented by and through its chief legal officer, Attorney General

6 Matthew J. Platkin.

7       29.    The State of New Mexico is a sovereign state of the United States of

8 America. New Mexico is represented by Attorney General Raúl Torrez, who is the chief law

9 enforcement officer authorized by N.M. Stat. Ann. § 8-5-2 to pursue this action.

10      30.    The State of New York is a sovereign state of the United States of America.

11 New York is represented by Attorney General Letitia James, the State's chief legal officer.

12      31.    The State of North Carolina is a sovereign state of the United States of

13 America. North Carolina is represented by Attorney General Jeff Jackson who is the chief

14 law enforcement officer of North Carolina.

15      32.    The State of Oregon is a sovereign state of the United States. Oregon is

16 represented by Attorney General Dan Rayfield. The Attorney General is the chief legal

17 officer of Oregon and is authorized to institute this action.

18      33.    Jessica Shirley is the Chair of the Pennsylvania Energy Development

19 Authority (PEDA). PEDA is a public corporation and governmental instrumentality

20 exercising public powers of the Commonwealth of Pennsylvania. 71 P.S. § 720.6.

21      34.    The State of Rhode Island is a sovereign state in the United States of

22 America. Rhode Island is represented by Attorney General Peter F. Neronha, who is the

23 chief law enforcement officer of Rhode Island.

24      35.    The State of Vermont, represented by its Attorney General, Charity R. Clark,

25 is a sovereign State in the United States of America. Attorney General Clark is authorized to

26 act on behalf of the State in this matter.

COMPLAINT – No.          7        ATTORNEY GENERAL OF WASHINGTON
                                        Environmental Protection Division
                                        800 Fifth Avenue STE 2000
                                        Seattle, WA 98104
                                        206-464-7744

1    36.    The Wisconsin Economic Development Corporation (WEDC) is a public

2    body corporate and politic created by the legislature of the state of Wisconsin, a sovereign

3    state of the United States of America. Wis. Stat. § 238.02(1). WEDC is represented by its

4    Chief Legal Officer, Jennifer H. Campbell.

5    **B.    Defendants**

6    37.    Defendant EPA is an independent agency within the executive branch of the

7    United States government.

8    38.    Defendant Lee Zeldin is the Administrator of EPA. Administrator Zeldin

9    oversees EPA and is responsible for the actions and decisions challenged in this suit. He is

10    sued in his official capacity.

11    39.    Defendants are agencies as defined in 5 U.S.C. § 551(1).

12    **III.    JURISDICTION AND VENUE**

13    40.    This action arises under the United States Constitution, and the

14    Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.; H.R. 1, Pub. L. No 119-21, § 60002,

15    139 Stat. 72 (2025). This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702.

16    41.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1). Defendants are

17    federal agencies and officers sued in their official capacities. The State of Washington is a

18    resident of this judicial district, and a substantial part of the events or omissions giving rise

19    to this Complaint occurred within this district.

20    **IV.    FACTUAL BACKGROUND**

21    **I.    Congress Establishes the Greenhouse Gas Reduction Fund**

22    42.    On August 16, 2022, President Biden signed the Inflation Reduction Act into

23    law. Pub. L. No. 117-169, 136 Stat. 1818.

24    43.    One key provision of the Act was the $27 billion "Greenhouse Gas

25    Reduction Fund," which Congress added as Section 134 of the Clean Air Act. Public Law

26    117-169, Sec. 60103, 136 Stat. 2065-66. Congress established the Greenhouse Gas

COMPLAINT – No.                                    8

1    Reduction Fund "to mobilize financing and private capital to address the climate crisis,

2    ensure our country's economic competitiveness, and promote energy independence while

3    delivering lower energy costs and economic revitalization to communities that have

4    historically been left behind."[1]

5         44.      Congress did not simply create a $27 billion Greenhouse Gas Reduction

6    Fund for EPA to administer without restriction. Instead, Congress made four individual

7    appropriations to EPA and gave EPA specific instructions about how to administer those

8    funds.

9         45.      One of those individual appropriations was a $7 billion appropriation for

10    "zero-emission technologies," which funded the SFA Program. More specifically, Congress

11    directed EPA to operate the program by making competitive grants to "eligible

12    recipients"—including states—"for the purposes of providing grants, loans, or other forms

13    of financial assistance, as well as technical assistance, to enable low-income and

14    disadvantaged communities to deploy or benefit from zero-emission technologies, including

15    distributed technologies on residential rooftops, and to carry out other greenhouse gas

16    emission reduction activities[.]" Clean Air Act Section 134(a)(1).

17         46.      Congress also appropriated to EPA $30 million for the "administrative costs

18    necessary to carry out activities under [Section 134]." Clean Air Act Section 134(a)(4). This

19    $30 million appropriation was "[i]n addition to amounts otherwise available." *Id.*

20         47.      The SFA appropriation was a time-limited, multi-year appropriation

21    beginning in fiscal year 2022 and expiring on September 30, 2024, meaning EPA had just

22    over two years to design and build the SFA Program and to award the funds that Congress

23    had appropriated. Congress further directed that EPA begin its grantmaking "not later than"

24    February 13, 2023. *See, e.g.*, Clean Air Act Section 134(a)(1).

25

---

26        [1] U.S. Env't Prot. Agency, *Greenhouse Gas Reduction Fund,* https://web.archive.org
/web/20250930002249/https://www.epa.gov/greenhouse-gas-reduction-fund (last visited Sept. 30, 2025).

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**A.    EPA Creates and Implements the SFA Program**

1 |

2 |        48.    Beginning in October 2022, EPA undertook a months-long public

3 | stakeholder engagement process to inform its implementation of the Greenhouse Gas

4 | Reduction Fund appropriations, including how to design the competitive grant programs that

5 | Congress directed EPA to create.[2]

6 |        49.    In April 2023, EPA announced a final framework for the three grant

7 | competitions EPA would administer under the Greenhouse Gas Reduction Fund, including

8 | the $7 billion SFA Program. This framework included details such as "preliminary

9 | descriptions of key parameters, application requirements, and anticipated reporting

10 | obligations."[3]

11 |        50.    On June 28, 2023, EPA published its initial Notice of Funding Opportunity,

12 | or "NOFO," outlining the SFA grant application requirements. EPA explained in the NOFO

13 | that it had designed the SFA Program to encourage the deployment of "residential

14 | distributed solar energy to lower energy bills for millions of Americans" and to "catalyze

15 | transformation in markets serving low-income and disadvantaged communities."[4]

16 |        51.    The SFA grant application period closed in October 2023, and EPA

17 | commenced a rigorous, six-month application review process. According to EPA, "[o]ver

18 | 200 federal experts in climate, power markets, affordable housing, state energy policy,

19 | Tribal energy, labor, and consumer protection from across the interagency participated in

20 | the [SFA] review and selection process."[5] In all, SFA applicants underwent at least three

---

[2] Richard K. Lattanzio, Cong. Rsch. Serv., IF12387, *EPA's Greenhouse Gas Reduction Fund (GGRF)* 1–2 (May 21, 2024), https://www.congress.gov/crs-product/IF12387.
[3] U.S. Env't Prot. Agency, *EPA Releases Framework for the Implementation of the Greenhouse Gas Reduction Fund as Part of President Biden's Investing in America Agenda*, https://www.epa.gov/newsreleases/epa-releases-framework-implementation-greenhouse-gas-reduction-fund-part-president (last updated Apr. 19, 2023).
[4] U.S. Env't Prot. Agency, *Solar for All Program: Notice of Funding Opportunity*, https://www.grants.gov/search-results-detail/348957 (last visited Oct. 3, 2025).
[5] U.S. Env't Prot. Agency, *Review and Selection Process*, https://web.archive.org/web/20250919230121/https://www.epa.gov/greenhouse-gas-reduction-fund/review-and-selection-process-solar-all (last visited Sept. 19, 2025).

COMPLAINT – No.                                      10                    ATTORNEY GENERAL OF WASHINGTON
                                                                              Environmental Protection Division
                                                                              800 Fifth Avenue STE 2000
                                                                              Seattle, WA 98104
                                                                              206-464-7744

1  levels of review by an "expert review panel," a "Senior Review Team," and lastly, EPA's

2  "Selection Officials." *Id.*

3        52.    On April 22, 2024, EPA announced that it had selected sixty applicants to

4  receive SFA grants, including "states, territories, Tribal governments, municipalities, and

5  nonprofits."[6] Each Plaintiff received a "State" grant under the SFA Program.

6        53.    Between April 22 and August 16, 2024, EPA worked with each of the

7  selected applicants to finalize how each SFA Recipient would operate its SFA program,

8  which was memorialized in a signed Assistance Agreement. EPA contemplated that the

9  SFA Recipients would "expand[] existing solar programs for low-income and disadvantaged

10 communities and launch[] new ones, which will collectively deliver residential solar to over

11 900,000 low-income households nationwide."[7]

12       54.    By August 16, 2024, EPA had obligated all of the $7 billion appropriated

13 under Clean Air Act Section 134(a)(1) ("SFA Funds") and entered into grant agreements

14 with Plaintiffs.

15       55.    EPA designed the SFA Program to provide programmatic support to SFA

16 Recipients. That support included EPA and SFA Recipients working hand-in-hand in the

17 initial months of the program to finalize program workplans and budgets before beginning

18 to implement their programs and funding projects in early 2025.[8] Other aspects included

19 reporting, procuring services and tools that support recipients in program design, and

20 establishing and convening advisory councils.

21       56.    Relying on Congress's authorization of the Solar for All program, and EPA's

22 creation and implementation of the Solar for All program beginning in October 2022, the

23

24        [6] U.S. Env't. Prot. Agency, *Biden-Harris Administration Announces $7 Billion Solar for All Grants to Deliver Residential Solar, Saving Low-Income Americans $350 Million Annually and Advancing Environmental Justice Across America* (Apr. 22, 2024), https://www.epa.gov/newsreleases/biden-harris-administration-announces-7-billion-solar-all-grants-deliver-residential.

25        [7] *Id.*

26        [8] *Id.*

COMPLAINT – No.                                    11                ATTORNEY GENERAL OF WASHINGTON
                                                                          Environmental Protection Division
                                                                            800 Fifth Avenue STE 2000
                                                                               Seattle, WA 98104
                                                                                 206-464-7744

1   SFA Recipients, including Plaintiffs, negotiated work plans and proposed budgets with

2   EPA. The work plan process included identifying program areas for funding, detailing how

3   funds would be allocated, and outlining terms and conditions. Until the work plans were

4   approved, Plaintiffs could only access up to two percent of their total obligated funds.

5          57.    On or about December 2024, the SFA Recipients finalized their work plans

6   with EPA's approval and EPA lifted the two percent funding restriction, allowing the SFA

7   Recipients to proceed with implementation of their work plans with the benefit of all their

8   obligated funds.

9          58.    Some States opted to take advantage of a "Program Planning Period" or

10  "Year", during which they could continue developing and refining their state SFA programs

11  with EPA's support and guidance. States were able to collaborate with their colleagues at

12  EPA to develop plans that would best serve their individual populations, while also

13  achieving the overarching goals of the SFA Program: to "enable low-income and

14  disadvantaged communities to deploy or benefit from zero-emission technologies." Clean

15  Air Act Section 134(a)(1).

16         59.    The States that opted for a Program Planning Period took concrete steps to

17  develop their programming during this time. For example, in Washington, staff at the

18  Washington State Department of Commerce spent more than 5,000 employee hours

19  developing state SFA programming, meeting with community members and stakeholders,

20  and negotiating and entering into agreements with contractors and subcontractors to

21  implement Washington's SFA programming. Likewise, in Arizona, the Governor's Office

22  of Resiliency consulted with local governments and utility companies to develop its

23  application and Work Plan. Many States, including Washington, Arizona, New Mexico,

24  Minnesota, and California, used the Program Planning Period to collaborate with tribal

25  governments to ensure that SFA programs would benefit those communities, too.

26

COMPLAINT – No.                         12                  ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    60.      Other States were able to implement their SFA programs immediately,

2 without taking a full Program Planning Period. For example:

3              a.   Michigan received EPA approval to exit the Program Planning Period

4                 in early February 2025 and released a pilot funding opportunity soon

5                 thereafter, selecting thirteen pilot awardees by August 2025;

6              b.   Illinois exited its planning period in January 2025 and, with EPA's

7                 approval, promptly withdrew $11 million in funds to expand Illinois's

8                 existing Community Solar Program and issued NOFOs for residential

9                 solar and community solar sub-grant programs; and

10             c.   Following EPA's approval to exit the planning period and commence

11                 program implementation, Massachusetts hired or reallocated 14.5

12                 full-time employees to implement the program; secured $8,300,000 in

13                 complementary state funding to support program administration

14                 costs; negotiated and entered into subaward agreements, obligating

15                 $96,625,388 to subrecipients; and through subrecipients, issued

16                 requests for proposals and selected and notified vendors for contracts

17                 totaling $4,895,205 to support the administration of its state SFA

18                 program.

19 **B.     President Trump Issues Executive Orders Targeting Clean Energy**

20    61.      Immediately after his inauguration on January 20, 2025, President Trump

21 issued an Executive Order instructing executive agencies to "immediately pause the

22 disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public

23 Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58)." Exec.

24 Order No. 14154, *Unleashing American Energy*, 90 Fed. Reg. 8353, 8354 (Jan. 29, 2025) at

25 § 7 ("Unleashing EO").

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1      62.      Consistent with the President's pronouncement and a subsequent directive

2 from the Office of Management & Budget ("OMB"), EPA unlawfully froze all SFA Funds,

3 along with funding for other programs under both the Inflation Reduction Act and the

4 Infrastructure Investment and Jobs Act.

5      63.      For a period following OMB's directive, Plaintiffs were unable to draw down

6 their duly obligated SFA Funds. EPA's unlawful and arbitrary funding freeze was ultimately

7 enjoined by the U.S. District Court for the District of Rhode Island on March 6, 2025. *See*

8 *New York v. Trump*, 769 F. Supp. 119 (D. R.I. Mar. 6, 2025).

9      64.      Concurrent with the unlawful Unleashing EO, President Trump issued a

10 second Executive Order purporting to declare a "National Energy Emergency." Exec. Order

11 14156, *Declaring a National Energy Emergency*, 90 Fed. Reg. 8433 (Jan. 29, 2025)

12 ("Energy Emergency EO"). One of the energy-related problems that the Energy Emergency

13 EO purports to address is that "our Nation's inadequate energy supply and infrastructure

14 causes and makes worse the high energy prices that devastate Americans, particularly those

15 living on low- and fixed-incomes." 90 Fed. Reg. at 8434.

16      65.      While the Energy Emergency EO announced the need for emergency

17 measures to encourage development of "a reliable, diversified, and affordable supply of

18 energy," it arbitrarily excluded solar energy from the list of resources that executive

19 agencies could deploy to combat the alleged "energy emergency," without offering any

20 justification for that exclusion. 90 Fed. Reg. at 8434, § 8(a).

21 **C.     EPA Targets the SFA Program**

22      66.      On January 29, 2025, the Senate confirmed Defendant Lee Zeldin as EPA

23 Administrator.

24      67.      In late February, Administrator Zeldin appeared on Fox News and discussed

25 the Greenhouse Gas Reduction Fund. He stated that EPA was working to "re-establish

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1 | accountability and oversight" over the grant programs and that the "entire scheme, in [his]

2 | opinion, is criminal."[9]

3 |      68.    Later in the appearance, Administrator Zeldin acknowledged that "agencies

4 | should not be coming up with their own interpretations of what law is" and instead should

5 | be "following our obligations under the law."[10]

6 |      69.    On March 2, EPA asked its Office of Inspector General to initiate an

7 | investigation into the entire Greenhouse Gas Reduction Fund program, citing "alleged

8 | misconduct, waste, conflicts of interest, and potential fraud."[11]

9 |      70.    On March 19, EPA's Office of Inspector General announced an audit of the

10 | SFA Program, stating that its "objective [was] to describe the status of funds, top recipients,

11 | and potential risks and impacts of EPA's [SFA] program within the Office of the

12 | Administrator's Office of the Greenhouse Gas Reduction Fund."[12]

13 |      71.    Upon information and belief, EPA's Office of Inspector General's SFA audit

14 | has not been completed.

15 | **D.    Congress repeals Clean Air Act Section 134 and rescinds unobligated funds**

16 |      72.    On July 3, 2025, Congress passed its budget reconciliation bill, H.R. 1.

17 | Section 60002 of H.R. 1 provides:

18 |            Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as

19 |            in effect on the day before the date of enactment of this Act) are rescinded.

20 |      73.    Section 60002 of H.R. 1 contains two operative clauses.

21 |

22 |    [9] Sunday Morning Futures, *Partnership with DOGE 'has been outstanding,' EPA Administrator Zeldin says*, (FOXNEWS television broadcast Feb. 23, 2025), https://www.foxnews.com/video/6369222506112.

23 |    [10] Rapid Response 47 (@RapidResponse47), X (Feb. 23, 2025), https://x.com/RapidResponse47/status/1893689799254356000.

24 |    [11] Letter from W.C. McIntosh, Acting Deputy Administrator, U.S. Env't Prot. Agency, to Nicole Murley, Acting Inspector General, U.S. Env't Prot. Agency (Mar. 2, 2025), *available at*

25 | https://www.epa.gov/system/files/documents/2025-03/epaigrequest030225.pdf.

26 |    [12] U.S. Env't Prot. Agency, Office of Inspector Gen., *Audit of the EPA's Greenhouse Gas Reduction Fund: Solar for All Program* (Mar. 19, 2025), https://web.archive.org/web/20250906080631 /https://www.epaoig.gov/sites/default/files/document/2025-03/oig_notification_memo_oa-fy25-0043.pdf.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

74.     First, Congress directed that Clean Air Act Section 134 "is repealed." This refers to the portion of Section 134 authorizing EPA to establish and administer the SFA Program. This means that no future Congress can appropriate funds for the purpose of making competitive grants under Section 134 without first enacting a new authorizing statute. This does not mean, however, that EPA is without authority to administer the SFA Program as to the current SFA Recipients.

75.     Second, Congress directed that any "unobligated balances of amounts" previously appropriated to perform the activities described in Clear Air Act Section 134 "are rescinded." This means that no Greenhouse Gas Reduction Fund funds that were obligated as of July 3, 2025 were rescinded.

76.     Plaintiffs' SFA Funds were all obligated well before Clean Air Act Section 134(a)(1)'s September 30, 2024 deadline, and were, therefore, not rescinded by H.R. 1. EPA is authorized to continue to administer the SFA Program as to the SFA Recipients, including Plaintiffs.

77.     Legislative history and materials confirm this plain meaning of H.R. 1.

78.     The bill summary explains that Section 60002 of H.R. 1 "repeals and rescinds underlined unobligated funds for the Greenhouse Gas Reduction Fund . . . ."[13]

79.     In committee meetings in May, Representative Morgan Griffith (R-VA), then-Chair of the House Energy and Commerce Committee's Subcommittee on the Environment, affirmed the following regarding the effect of H.R. 1:

- Congress "can't rescind expenditures that have already been obligated. . . ."[14]
- "[I]f a grant was already given, as far as this bill is concerned, then that would still be going forward."[15]

---

[13] H.R. 1., 19th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/1 (emphasis added).

[14] House Committee on Energy and Commerce, *Full Committee Markup of Budget Reconciliation Text Part 1*, at 5:44:09-5:44:15 (YouTube, May 13, 2025), https://www.youtube.com/live/J4fGR1CiNGg?si=0kz8e0kADDcUT35Q&t=20423 (last visited Oct. 9, 2025).

COMPLAINT – No.                                    16

1      •   "If the grant has already been granted and the money is obligated, then our

2          language does not affect that."[16]

3      80.      Representative Brett Guthrie (R-KY), Chair of the House Energy and

4 Commerce Committee likewise explained that H.R. 1 "does not close the grants on any

5 obligated funds."[17]

6      81.      Before H.R. 1 was enacted, the Congressional Budget Office ("CBO")

7 "scored" the bill and estimated that repealing and rescinding unobligated funds from all

8 three of the Greenhouse Gas Reduction Fund grant programs would only net $19 million in

9 savings, none of which included the appropriation under Clean Air Act Section 134(a)(1).

10 Upon information and belief, the $19 million in savings refers to approximately the

11 remaining balance of the funds appropriated for EPA's administrative costs under 42 U.S.C.

12 § 7434(a)(4), and is far less than the total obligated funds. This estimate was known to

13 Congress prior to passing H.R. 1.

14      82.      The Republican Senate Majority accepted CBO's $19 million savings

15 estimate as evidenced by an August 14, 2025 letter from thirty Senators.[18]

16      83.      It was also accepted by the House. "The budgetary significance of this

17 provision is questionable, as only $19 million is available out of the entire $27 billion

18 appropriated. This remaining money is allocated for administrative purposes." H.R. Rep.

19 No. 119-106(I) at 627 (2025).

20      84.      After H.R. 1's enactment, CBO issued a July 21, 2025 report reiterating its

21 assessment that repealing and rescinding unobligated funds from all three of the Greenhouse

22 Gas Reduction Fund grant programs would only net $19 million in savings.

---

23      [15] *Id.* at 5:40:22-5:40:29.

24      [16] *Id.* at 5:40:34-5:40:40.

     [17] *Id.* at 5:41:55-5:42:02.

25      [18] Letter from Sen. Sheldon Whitehouse, Ranking Member of Senate Comm. on Env't & Pub. Works, et al. to Lee Zeldin, Administrator, U.S. Env't Prot. Agency (Aug. 14, 2025), *available at* https://www.epw.

26 senate.gov/public/_cache/files/7/f/7fc428d4-aafa-4991-a25e-655d295fc0e2/D93F6E6E26805AFA241C4D39073 BED3B75A6F496F4350B82CC4D782AAE9BC35C.8.14.25-letter-to-epa-re-solar-for-all.pdf.

85.    The $19 million in unobligated funds rescinded under H.R. 1 did not eliminate EPA's ability to fund its administration of the SFA Program because Congress's original $30 million appropriation was not the exclusive source of funding for EPA's Greenhouse Gas Reduction Fund administrative costs. To the contrary, Congress expressly appropriated $30 million for administrative costs "in addition to amounts otherwise available." Clean Air Act Section 134(a)(4).

86.    Alternative sources of administrative funding were available to EPA on August 7, 2025.  For example, on March 15, 2025, Congress passed a continuing resolution for Fiscal Year 2025 appropriating $3,195,028,000 in funding for "Environmental Protection Agency—Environmental Programs and Management," which was unaffected by H.R. 1 and could be used by EPA to fund its administration of the SFA Program.[19]

87.    Upon information and belief, Defendants did not immediately understand H.R. 1 to terminate the SFA Program or the administration of it. Rather, EPA staff continued to administer the SFA Program for a period of time following the enactment of H.R. 1.

**E.    EPA Terminates the SFA Program Based Solely on the H.R. 1 Interpretation**

88.    On or before August 7, 2025, ignoring the plain text of Section 60002, the wealth of legal authority instructing against rescission by implication, and pre- and post-enactment legislative materials confirming the limited, prospective effect of Section 60002, Defendants devised the H.R. 1 Interpretation.

89.    Defendants then relied on the erroneous H.R. 1 Interpretation in issuing the Program Termination Directive on August 7, 2025.

---

[19] Full Year Continuing Appropriations and Extensions Act, Pub. L. No. 119-4, § 1802(3), 139 Stat. 9, 30 (2025). Notably, EPA had requested additional funding for this appropriations account specifically to support Greenhouse Gas Reduction Fund administration. U.S. Env't Prot. Agency, *Fiscal Year 2025 Justification of Appropriation Estimates for the Committee on Appropriations, Tab 05: Environmental Programs and Management* 40 (March 2024), https://www.epa.gov/system/files/documents/2024-04/fy25-cj-05-epm.pdf.

COMPLAINT – No.                          18                ATTORNEY GENERAL OF WASHINGTON
                                                                  Environmental Protection Division
                                                                    800 Fifth Avenue STE 2000
                                                                        Seattle, WA 98104
                                                                          206-464-7744

1    90.    Administrator Zeldin articulated the Program Termination Directive in a post

2 on X in which he disparaged the SFA Program as a "boondoggle":

3

4

5

6

7

8

9

10

11



12    91.    Along with the X post, Administrator Zeldin posted a video[20] on EPA's

13 verified YouTube account in which he referred to the SFA Program as a "grift" and made a

14 series of baseless accusations about the Program:

15    •  "[O]ne of the more shocking features of Solar for All was with regards to the

16        massive dilution of the money, as many grants go through pass through after

17        pass through after pass through after pass through with all of the middlemen

18        taking their own cut—at least 15% by conservative estimates;"

19    •  the SFA Program is "exempted" from federal laws requiring "federal

20        agencies to use American workers, American Products, and American

21        infrastructure for projects using American taxpayer dollars;" and

22    •  "very little money has been spent."

23    92.    Shortly after this announcement, each SFA Recipient, including each

24 Plaintiff, received a nearly identical Termination Memorandum from EPA Award Official

25 _____

26    [20] U.S. Env't Prot. Agency, *Administrator Lee Zeldin Announces EPA Is Ending Solar For All*,
YOUTUBE (Aug. 8, 2025), https://www.youtube.com/watch?v=CfU3bYKmBOA.

COMPLAINT – No.                          19

1  Devon Brown. The Termination Memorandum explained that Defendants had "made the

2  decision to terminate the SFA program and existing grants because the EPA no longer has a

3  statutory basis or dedicated funding to continue administering and overseeing" the Program.

4  *See* Exh. A. The Termination Memorandum purported to implement the Program

5  Termination Directive and explained that the justification for doing so was the H.R. 1

6  Interpretation.

7    93.    The Termination Memorandum identified the following components of

8  Defendant's H.R. 1 Interpretation:

9        a.  The "grant appropriations . . . are rescinded;"

10        b.  EPA lacks "substantive legal authority [and] the financial

11            appropriations needed to continue implementation, oversight, or

12            monitoring . . . of these grants or of Solar for All;"

13        c.  "[T]he SFA Program is no longer to operate;" and

14        d.  "Any attempt to continue to program's administration . . . is no longer

15            legal permissible." *Id*.

16    94.    The Program Termination Directive, and the H.R. 1 Interpretation on which

17  it is based, are contrary to H.R. 1's plain language, for several reasons.

18    95.    First, Congress did not direct Defendants to terminate the SFA Program or

19  prohibit Defendants from administering the SFA Program as to existing SFA Recipients.

20    96.    Second, not only did Congress not expressly state that "the grant

21  appropriations . . . are rescinded," it stated the opposite: only the <u>unobligated</u> balances of

22  any amount "made available to carry out" Clean Air Act Section 134 are rescinded.

23    97.    Third, while it is true that Section 60002 rescinds the unobligated balance of

24  funds previously appropriated for "administrative costs," the rescission of these funds did

25  not deprive Defendants of the "financial appropriations needed to continue implementation,

26  oversight or monitoring" of the SFA Program, particularly when Congress originally

appropriated the funds "in addition to amounts otherwise available." Clean Air Act Section 134(a)(4).

98.    Fourth, "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holders*, 566 U.S. 257, 266 (2012). H.R. 1 Section 60002 contains no express or implied direction that its requirements be applied retroactively.

99.    Finally, the Program Termination Directive, and the H.R. 1 Interpretation on which it relies, are also in significant tension with 1 U.S.C. § 109, which provides that: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

100.    Members of Congress swiftly told Defendants that the Program Termination Directive was contrary to H.R. 1.

101.    For example, on August 11, three members of Congress wrote to Administrator Zeldin that he had "falsely claimed that passage and enactment of H.R. 1 . . . gives [him] the authority to take back obligated funds." Contrary to this claim, "grant funding awarded before [H.R. 1] was enacted . . . does not constitute unobligated funds subject to H.R. 1."[21]

102.    On August 14, thirty-two Senators wrote to Administrator Zeldin to emphasize that all awarded SFA grants had been obligated for a year, and that EPA's attacks on SFA "continued a pattern of false statements" about Greenhouse Gas Reduction Fund programs.[22]

---

[21] Letter from Rep. Frank Pallone, Jr., et al., to Hon. Lee Zeldin, Env't Prot. Agency Adm'r (Aug. 11, 2025), *available at* https://democrats-energycommerce.house.gov/sites/evo-subsites/democrats-energycommerce.house.gov/files/evo-media-document/august-11-epa-letter-re-ggrf-ejcj-and-hr1.pdf.

[22] Letter from Sen. Sheldon Whitehouse, et al., to Hon. Lee Zeldin, Env't Prot. Agency Adm'r (Aug. 14, 2025), *available at* https://www.epw.senate.gov/public/_cache/files/7/f/7fc428d4-aafa-4991-a25e-

COMPLAINT – No.                       21

103.    Similarly, on August 14, members of Arizona's Congressional delegation and Arizona Governor Katie Hobbs told Administrator Zeldin and OMB Director Russell Vought that "[r]etracting obligated Solar for All funds is an encroachment on Congress's fiscal authority and a violation of established federal regulations." They demanded "a full and immediate disbursement" of Arizona's SFA funds.[23]

104.    Thus, Defendants' categorical termination of the SFA Program is incompatible with Congress's express directive that only funds that were *unobligated* prior to H.R. 1's enactment should be rescinded.

**F.    EPA's Termination of the SFA Program Includes Cutting Off Funds to the SFA Recipients**

105.    EPA's form Termination Memorandum assured Plaintiffs that they "may request payment from [ASAP] system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan." *See* Exh. A.

106.    Despite these assurances, on or before August 8, 2025, Defendants devised the Deobligation Directive, and upon information and belief, directed EPA staff to claw back all remaining SFA Funds previously obligated and made available to the SFA Recipients, including Plaintiffs.

107.    Defendants' implementation of the Deobligaton Directive was hasty, inconsistent, and unexplained. For example, beginning on August 8, Defendants "suspended" many (but not all) Plaintiffs' ASAP accounts. This prevented many Plaintiffs from drawing down any of their obligated SFA Funds, even for allowable costs incurred prior to August 7.

---

655d295fc0e2/D93F6E6E26805AFA241C4D39073BED3B75A6F496F4350B82CC4D782AAE9BC35C.8.14.25-letter-to-epa-re-solar-for-all.pdf.
    [23] Letter from Gov. Katie Hobbs, et al., to Hon. Russell Vought & Hon. Lee Zeldin, Env't Prot. Agency Adm'r (Aug. 14, 2025), *available at* https://www.kelly.senate.gov/wp-content/uploads/2025/08/8.14.25-Solar-for-All-Letter.pdf.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    108.    Seemingly in response to outreach from some Plaintiffs, between August 11

2 and August 18, Defendants changed (or caused to be changed) many of (but again, not all)

3 Plaintiffs' ASAP account statuses from "suspended" to "liquidated," making the SFA Funds

4 in these accounts available for drawdowns again.

5    109.    Concurrent with the change in account statuses, Defendants also reduced

6 Plaintiffs' available account balances to ten percent or less of what the balance was on

7 August 7, 2025. For example, on August 8, 2025, Arizona's SFA ASAP Account had an

8 available balance of $155,678,188.41. On August 18, Arizona's SFA ASAP Account had an

9 available balance of $10,891,908.14. Likewise, Michigan's ASAP account had an available

10 balance of $154,709,215.59 on August 6, which had dropped to just $10,148,931.94 by

11 August 11. And California's ASAP account dropped from $249,045,222.95 on August 7 to

12 just $17,422,106.08 on August 11.

13    110.    Defendants did not provide and have not provided Plaintiffs with any

14 explanation for why Defendants removed the funds from Plaintiffs' accounts.

15    111.    Upon information and belief, Defendants removed the vast majority of the

16 remaining SFA Funds from all recipient accounts based on the flawed H.R. 1 Interpretation

17 in a calculated effort to enforce the erroneous Program Termination Directive and

18 Deobligation Directive.

19    112.    As of the date of this filing, many Plaintiffs' ASAP accounts remain in a

20 "liquidated" status and Defendants have not restored Plaintiffs' available balances to August

21 7, 2025 levels.

22 **G.    Plaintiffs Timely Submitted Administrative Disputes to EPA Challenging the
      Termination of Their Individual Grants and Challenging the Termination of the
23    SFA Program**

24    113.    Defendants' form Termination Memorandum outlined a dispute process

25 pursuant to 2 C.F.R. 1500.15 with a deadline of 30 days to submit a dispute to EPA.

26

1    114.    Plaintiffs timely submitted disputes to EPA pursuant to Part 1500 and

2  thereby challenged EPA's termination of their individual grants and the Program

3  Termination Directive.

4    115.    2 C.F.R. 1500.15 does not establish a jurisdictional exhaustion requirement.

5    116.    Even if it did, Plaintiffs are not required to exhaust available administrative

6  remedies because agency review is plainly futile in light of EPA's H.R. 1 Interpretation.

7    117.    Upon information and belief, the Dispute Decision Official responsible for

8  resolving each Plaintiff's Part 1500 dispute lacks authority to overturn or disregard either

9  the agency-wide H.R. 1 Interpretation or the Program Termination Directive.

10    118.    Without this Court's order vacating the Program Termination Directive and

11  the underlying H.R. 1 Interpretation, Plaintiffs' Part 1500 disputes are futile.

12  **H.    The Deobligation of the SFA Funds Is Unlawful and Must Be Enjoined by the Court to Preserve the Availability of Those Funds for the SFA Program**

13

14    119.    As stated *supra*, Congress's SFA appropriation was a time-limited, multi-

15  year appropriation. EPA obligated all $7 billion of the funds that Congress appropriated

16  pursuant to Clean Air Act Section 134(a)(1) by August 16, 2024, before the appropriation

17  expired on September 30, 2024. Therefore, at the close of the Fiscal Year 2024, these

18  obligated funds were placed in an "expired" treasury account, where they retain their 2024

19  fiscal-year identity.[24]

20    120.    This means that, so long as the SFA Funds retain their "obligated" status, the

21  SFA Funds remain available to fund the SFA Program for five years after those funds

22  expire, *i.e.*, until September 30, 2029.[25]

23  / / /

24  / / /

25  ────────────────
    [24]    U.S. Gov't Accountability Off., Principles of Federal Appropriations Law ("GAO Redbook")
26  at 5-72, available at https://www.gao.gov/assets/2019-11/202437.
    [25]    GAO Redbook at 5-72.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    121.    However, if the SFA Funds become deobligated, they will generally no

2  longer available for EPA to obligate for non-SFA purposes because they expired at the end

3  of Fiscal Year 2024.[26]

4    122.    EPA has no lawful authority to deobligate any of Plaintiffs' funds because

5  (1) Congress directed EPA to appropriate the SFA Funds, EPA obligated the  SFA Funds,

6  and Congress did not direct that the SFA Funds be deobligated; (2) Defendants' H.R. 1

7  Interpretation and Program Termination Directive are unlawful; and (3) proper deobligation

8  by an executive agency can only occur after the natural end of the grant period or a lawful

9  termination of the grant agreement and, even then, only upon compliance with the closeout

10  procedures identified in 2 C.F.R. §§ 200.344, .345.

11    123.    Because Defendants had no legal basis to terminate the SFA Program,

12  Defendants cannot lawfully take any steps to deobligate the SFA Funds.

13    124.    A Court order enjoining the Deobligation Directive is necessary to ensure

14  that the SFA Funds remain available to be restored or redistributed to the SFA Recipients if

15  this Court vacates the Program Termination Directive.

16  **II.    PLAINTIFFS' HARMS**

17    125.    Defendants' implementation of the unlawful H.R. 1 Interpretation, Program

18  Termination Directive, and Deobligation Directive has harmed and will continue to harm

19  Plaintiffs and their respective residents.

20    126.    Plaintiffs committed resources, launched programs, entered into agreements,

21  and moved forward in reliance on EPA's continued administration of the SFA Program.

22  After months of cooperation, coordinated planning and reliance, Defendants' wholesale

23  programmatic termination not only upended Plaintiffs' efforts and reasonable reliance, but

24  also stripped away the promised climate and community benefits – clean energy access, cost

25

26    [26]    GAO Redbook at 5-71.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  savings, and equity investments – that the Congressionally mandated SFA Program was

2  designed to deliver.

3      127.    Plaintiffs relied upon the SFA Program to meet benchmarks for clean energy

4  production, to create jobs, to limit environmental damage caused by pollutants, and to

5  generate energy cost savings for households, including in low-income and disadvantaged

6  communities.

7      128.    The Program Termination Directive and Deobligation Directive also harm

8  Plaintiffs and their residents, who relied upon SFA participation in meeting statutory clean

9  energy and climate goals, completing projects that would have qualified for federal tax

10  credits expiring on December 31, 2025, achieving sustainability standards, crafting policy

11  initiatives, and implementing clean energy programs as part of the work plan process.

12      129.    The Program Termination Directive and Deobligation Directive terminate

13  and defund the SFA Program. Even if Plaintiffs successfully appeal the termination of their

14  SFA grants through administrative procedures, they may not be able to access any SFA

15  Funds because of the Deobligation Directive, meaning SFA Funds will become or have

16  already been rendered unavailable, and may indeed expire.

17      130.    The underlying unlawful H.R. 1 Interpretation also makes the Plaintiff's

18  ability to challenge their individual grant terminations likely futile. Thus, vacatur of the

19  H.R. 1 Interpretation may increase Plaintiffs' likelihood of success on any direct challenges

20  to the individual grant terminations in other forums.

21          **III.    CAUSES OF ACTION**

22          <u>**Count I**</u>

23      **Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)**
    **Contrary to Law/In Excess of Statutory Authority**

24      131.    Plaintiffs incorporate by reference all preceding allegations.

25  / / /

26  / / /

COMPLAINT – No.          26

1      132.    The H.R. 1 Interpretation, the Program Termination Directive, and the

2    Deobligation Directive are each a final agency action, taken separately and/or in

3    combination. 5 U.S.C. § 704.

4      133.    Under the APA, a reviewing court must set aside a challenged agency action

5    if the action is "not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory

6    jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

7      134.    An agency may not take any action that exceeds the scope of its statutory or

8    constitutional authority or is otherwise contrary to law.

9      135.    Agency action is not in accordance with the law if the action contravenes or

10    otherwise fails to implement the statutory directives of Congress consistent with the

11    statute's text, structure, and purpose.

12      136.    Here, Congress appropriated $7 billion for the SFA Program and directed

13    that Defendants obligate those funds to qualified recipients by September 30, 2024.  These

14    funds were timely obligated to the SFA Recipients, including to Plaintiffs.

15      137.    Section 60002 of H.R. 1 did not authorize or direct Defendants to terminate

16    the SFA Program.

17      138.    Section 60002 of H.R. 1 did not authorize or direct Defendants to rescind any

18    funds that were obligated prior to the date that H.R. 1 was enacted.

19      139.    Section 60002 expressly excluded Plaintiffs' awards from rescission because

20    Plaintiffs' awards were fully obligated months prior to "the day before the date of enactment

21    of [the] Act."

22      140.    The H.R. 1 Interpretation, the Program Termination Directive, and the

23    Deobligation Directive unlawfully exceed Defendants' statutory authority under H.R. 1,

24    which only authorizes the rescission of unobligated funds.

25      141.    The H.R. 1 Interpretation, Program Termination Directive, and Deobligation

26    Directive are contrary to law because, among other things:

1           a.   They affect already-obligated funds, not unobligated funds;

2           b.   Congress did not direct or otherwise authorize Defendants to

3                 terminate the SFA Program;

4           c.   Section 60002 of H.R. 1 does not apply retroactively; and

5           d.   Section 60002 of H.R. 1 does not extinguish prior liabilities.

6       142.    Plaintiffs are entitled to (1) a declaration that Defendants' H.R. 1

7 Interpretation, Program Termination Directive, and Deobligation Directive are contrary to

8 law, in excess of Defendants' statutory authority, and violate the APA; (2) vacatur of

9 Defendants' H.R. 1 Interpretation, the Program Termination Directive, and the Deobligation

10 Directive, and (3) injunctive relief preventing Defendants from implementing or enforcing

11 the H.R. 1 Interpretation, the Program Termination Directive, and the Deobligation

12 Directive.

13                          **<u>Count II</u>**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**

14                              **Arbitrary and Capricious**

15       143.    Plaintiffs incorporate by reference all preceding allegations.

16       144.    The H.R. 1 Interpretation, the Program Termination Directive, and the

17 Deobligation Directive are each a final agency action, taken separately and/or in

18 combination. 5 U.S.C. § 704.

19       145.    The APA requires that a court "hold unlawful and set aside agency action . . .

20 found to be . . . arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

21       146.    An agency action is arbitrary and capricious if the agency has "relied on

22 factors which Congress has not intended it to consider, entirely failed to consider an

23 important aspect of the problem, offered an explanation for its decision that runs counter to

24 the evidence before the agency, or is so implausible that it could not be ascribed to a

25 difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the*

26 *U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In other words, agency

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    action is arbitrary or capricious where it is not "reasonable and reasonably explained."

2    *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

3         147.    An agency must offer "genuine justifications for important decisions, reasons

4    that can be scrutinized by courts and the interested public." *Dep't of Commerce v. New*

5    *York*, 588 U.S. 752, 785 (2019). Agencies may not rely on explanations that are "contrived"

6    or "incongruent with what the record reveals about the agency's priorities and

7    decisionmaking process." *Id*.

8         148.    Agency action taken on pretextual grounds violates the APA's requirements

9    of reasoned agency decision-making.

10        149.    Agency action is also arbitrary and capricious if the agency fails to consider

11    reasonable alternatives or other important factors, such as legitimate reliance interests.

12        150.    Defendants have identified nothing other than the H.R. 1 Interpretation to

13    support the Program Termination and Deobligation Directives.

14        151.    Defendants' sole stated rationale for the Program Termination Directive is

15    the H.R. 1 Interpretation that "EPA no longer has a statutory basis or dedicated funding to

16    continue administering and overseeing the nearly $7 billion outlay to approximately 60

17    grant recipients." Exh. A. The H.R. 1 Interpretation is an incorrect, irrational, and

18    insufficient explanation and thus not a reasoned basis for that action.

19        152.    Defendants' prior statements and actions demonstrate that their reliance upon

20    the H.R. 1 Interpretation was pretextual and that the real basis for the Program Termination

21    Directive was their desire to eliminate a "boondoggle" and implement an anti-solar energy

22    agenda.

23        153.    Defendants instructed EPA's Office of Inspector General to undertake an

24    audit of the SFA Program but terminated the SFA Program without waiting to see whether

25    the results of the audit confirmed any of Defendants suspicions regarding "misconduct,

26    waste, conflicts of interest, and potential fraud" within the SFA Program.

COMPLAINT – No.             29          ATTORNEY GENERAL OF WASHINGTON

1    154.    Defendants' H.R. 1 Interpretation, the Program Termination Directive, and

2    the Deobligation Directive are arbitrary and capricious because, among other things:

3            a.    Defendants provided no reasoned basis for the actions;

4            b.    Defendants ignored Plaintiffs' and subrecipients' substantial reliance

5                  interests, and the harmful impact of an abrupt and complete

6                  termination of the SFA Program before deciding to terminate the

7                  program; and

8            c.    Defendants failed to consider reasonable alternatives to terminating

9                  the entire program, including whether it could continue administering

10                 the SFA Program as to the existing grants by using some of the

11                 $3,195,028,000 that Congress appropriated to EPA in March 2025 to

12                 pay for "Environmental Programs and Management."

13   155.    Plaintiffs are entitled to (1) a declaration that Defendants' H.R. 1

14   Interpretation, Program Termination Directive, and Deobligation Directive are arbitrary and

15   capricious and violate the APA; (2) vacatur of Defendants' H.R. 1 Interpretation, the

16   Program Termination Directive, and the Deobligation Directive, and (3) injunctive relief

17   preventing Defendants from implementing or enforcing the H.R. 1 Interpretation, the

18   Program Termination Directive, and the Deobligation Directive.

19                            **Count III**
20                        **U.S. Constitution;**
     **Appropriations Clause, Separation of Powers Doctrine**

21   156.    Plaintiffs incorporate by reference all preceding allegations.

22   157.    The U.S. Constitution "exclusively grants the power of the purse to

23   Congress, not the President." *City & County of San Francisco v. Trump*, 897 F.3d 1225,

24   1231 (9th Cir. 2018).

25   / / /

26   / / /

COMPLAINT – No.                        30          ATTORNEY GENERAL OF WASHINGTON
                                                   Environmental Protection Division
                                                   800 Fifth Avenue STE 2000
                                                   Seattle, WA 98104
                                                   206-464-7744

1    158.    The U.S. Constitution's Appropriations Clause, art. I, § 9, cl. 7, provides that

2    "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made

3    by Law."

4    159.    Appropriations are laws that allow for federal expenditures of "public money

5    for designated purposes." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.,*

6    *Ltd.*, 601 U.S. 416, 425 (2024). "Absent congressional authorization, the Administration

7    may not redistribute or withhold properly appropriated funds in order to effectuate its own

8    policy goals." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir.

9    2018).

10    160.    Congress also possesses the power to legislate. Article I, Section 1 of the

11    U.S. Constitution states "[a]ll legislative Powers herein granted shall be vested in a

12    Congress of the United States, which shall consist of a Senate and a House of

13    Representative. U.S. Const., art. I, § 1.

14    161.    The Executive's powers are limited to those specifically conferred by "an act

15    of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343

16    U.S. 579, 585 (1952). The Executive has no power "to enact, to amend, or to repeal

17    statutes."  Clinton v. City of New York, 524 U.S. 417, 438 (1998).

18    162.    The Constitution further provides that the executive must "take Care that the

19    laws be faithfully executed." U.S. Const. art. II, § 3. Given these principles, where the

20    Executive Branch overrides a statute or the legislative intent of Congress, it violates the

21    separation of powers doctrine.

22    163.    Here, Congress appropriated $7 billion for the SFA Program and directed

23    that Defendants obligate those funds to qualified recipients by September 30, 2024. These

24    funds were timely obligated to the SFA Recipients, including to Plaintiffs, pursuant to

25    Congress's spending and appropriations power.

26

COMPLAINT – No.                                    31

1      164.     Section 60002 of H.R. 1 did not authorize or direct Defendants to terminate

2 the SFA Program.

3      165.     Section 60002 of H.R. 1 did not authorize or direct Defendants to rescind any

4 funds that were obligated prior to the date that H.R. 1 was enacted.

5      166.     Section 60002 expressly excluded Plaintiffs' awards from rescission because

6 Plaintiffs' awards were fully obligated months prior to "the day before the date of enactment

7 of [the] Act."

8      167.     EPA's H.R. 1 Interpretation, Program Termination Directive, and

9 Deobligation Directive contravene H.R. 1's plain language and Congress's legislative intent

10 by purporting to terminate and deobligate funds that were obligated to Plaintiffs prior to the

11 September 30, 2024 deadline.

12      168.     Defendants violated constitutional separation-of-powers constraints because,

13 through the H.R. 1 Interpretation, the Program Termination Directive, and the Deobligation

14 Directive, Defendants have overridden Congress's considered judgments by attempting to

15 terminate the SFA Program and rescind obligated SFA Funds.

16      169.     Plaintiffs are entitled to (1) a declaration that Defendants' H.R. 1

17 Interpretation, Program Termination Directive, and Deobligation Directive violate the

18 Constitution's Appropriations Clause and constitutional separation of powers principles;

19 (2) vacatur of Defendants' H.R. 1 Interpretation, the Program Termination Directive, and

20 the Deobligation Directive, and (3) injunctive relief preventing Defendants from

21 implementing or enforcing the H.R. 1 Interpretation, the Program Termination Directive,

22 and the Deobligation Directive.

23 **Count IV**

**Non-Statutory Review *Ultra Vires* - Executive Action in Excess of
Statutory Authority**

24

25      170.     Plaintiffs incorporate by reference all preceding allegations.

26

COMPLAINT – No.              32           

1     171.    Federal courts possess the power in equity to grant injunctive relief with

2    respect to violations of federal law by federal officials. *Armstrong v. Exceptional Child Ctr.,*

3    *Inc.*, 575 U.S. 320, 326-27 (2015).

4     172.    Congress did not authorize or direct Defendants' categorical termination of

5    the SFA Program.

6     173.    The H.R. 1 Interpretation, Program Termination Directive, and Deobligative

7    Directive are incompatible with Congress's directive that only funds that were unobligated

8    prior to H.R. 1's enactment should be rescinded.

9     174.    Defendants have no other constitutional or statutory authority to terminate

10    the SFA Program or rescind or deobligate funds lawfully obligated to Plaintiffs.

11     175.    Defendants' H.R. 1 Interpretation, Program Termination Directive, and

12    Deobligation Directive Termination Directive are *ultra vires* acts because no act of

13    Congress authorizes Defendants to rescind the SFA Program's obligated funds or otherwise

14    terminate the SFA Program.

15     176.    Plaintiffs are entitled to (1) a declaration that Defendants' H.R. 1

16    Interpretation, Program Termination Directive, and Deobligation Directive are *ultra vires*;

17    (2) vacatur of Defendants' H.R. 1 Interpretation, the Program Termination Directive, and

18    the Deobligation Directive, and (3) injunctive relief preventing Defendants from

19    implementing or enforcing the H.R. 1 Interpretation, the Program Termination Directive,

20    and the Deobligation Directive.

21                  **PRAYER FOR RELIEF**

22    WHEREFORE, Plaintiffs respectfully request that the Court:

23        a.    Declare unlawful Defendants' H.R. 1 Interpretation, Program

24            Termination Directive, and Deobligation Directive;

25        b.    Vacate and set aside Defendants' H.R. 1 Guideline, Program Termination

26            Directive, and Deobligation Directive;

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1        c.   Order Defendants to reinstate the SFA Program;

2        d.   Enjoin Defendants from reobligating, using, expending, or otherwise

3            placing beyond the Court's jurisdiction any funds appropriated by

4            Congress for the SFA Program except for purposes of the SFA Program;

5        e.   Award Plaintiffs their reasonable fees, costs, and expenses, including

6            attorneys' fees; and

7        f.   Grant all other relief as this Court deems appropriate.

8      RESPECTFULLY SUBMITTED this 16th day of October, 2025.

9
| **KRISTIN K. MAYES** | **NICHOLAS W. BROWN** |
|---|---|
| Attorney General of Arizona | Attorney General of Washington |
| | |
| By: /s/ Mary M. Curtin | s/ C. L. Junine So |
| MARY M. CURTIN* | C. L. JUNINE SO, WSBA # 58779 |
| Senior Litigation Counsel | LEAH A. BROWN, WSBA # 45803 |
| ALEXA G. SALAS* | SARAH E. SMITH-LEVY, WSBA # 55770 |
| Assistant Attorney General | Assistant Attorneys General |
| Office of the Arizona Attorney General | Environmental Protection Division |
| 2005 N. Central Ave. | 800 Fifth Avenue, Suite 2000 |
| Phoenix, Arizona 85004 | Seattle, Washington 98104 |
| Mary.Curtin@azag.gov | 206-464-7744 |
| Alexa.Salas@azag.gov | junine.so@atg.wa.gov |
| | leah.brown@atg.wa.gov |
| *Attorneys for the State of Arizona* | sarah.e.smith-levy@atg.wa.gov |
| | |
| | *Attorneys for the State of Washington* |
| | |
| **KEITH ELLISON** | **BRIAN L. SCHWALB** |
| Attorney General of Minnesota | Attorney General for the District of Columbia |
| | |
| By: /s/ Ryan Pesch | By: /s/ Lauren M. Marks |
| RYAN PESCH* | LAUREN M. MARKS* |
| CAT RIOS-KEATING* | Special Assistant Attorney General |
| *Special Assistant Attorneys General* | LAUREN CULLUM* |
| BRIAN CARTER* | Special Assistant Attorney General |
| *Special Counsel* | BRIAN CALDWELL* |
| Office of the Minnesota Attorney General | Senior Assistant Attorney General |
| 445 Minnesota Street, Suite 600 | Office of the Attorney General |
| St. Paul, MN  55101 | for the District of Columbia |
| (651) 728-7116 | 400 6th Street, N.W., 10th Floor |
| ryan.pesch@ag.state.mn.us | Washington, D.C. 20001 |
| catherine.rios-keating@ag.state.mn.us | Lauren.marks@dc.gov |
| brian.carter@ag.state.mn.us | Lauren.cullum@dc.gov |
| | Brian.caldwell@dc.gov |
| *Counsel for the State of Minnesota* | |
| | *Attorneys for the District of Columbia* |

1  **ROB BONTA**
Attorney General of California

2

By: */s/ Marie Elizabeth Logan*
3  MARIE ELIZABETH LOGAN*
REBECCA HUNTER*
4  ABIGAIL BLODGETT*
DYLAN C. REDOR*
5  THEODORE A. MCCOMBS*
MYUNG PARK*
6  Deputy Attorneys General
California Department of Justice
7  1515 Clay Street
Oakland, CA 94612
8  Marie.Logan@doj.ca.gov

9  *Attorneys for the State of California*

10

11  **WILLIAM TONG**
Attorney General of Connecticut

12

By: */s/ Jill Lacedonia*
13  JILL LACEDONIA*
Assistant Attorney General
14  165 Capitol Avenue
Hartford, CT 06106
15  (860) 808-5250
Jill.Lacedonia@ct.gov
16

*Attorneys for the State of Connecticut*
17

18

19

20

21

22

23

24

25

26

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM*
Assistant Deputy Attorney General
DAVID MOSKOWITZ*
Deputy Solicitor General
CYNTHIA VITALE*
Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Carrie.Noteboom@coag.gov
David.Moskowitz@coag.gov
Cynthia.Vitale@coag.gov

*Attorneys for the State of Colorado*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY*
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

COMPLAINT – No.                    35

1  **KWAME RAOUL**
   Attorney General of Illinois

2  By: /s/ Katharine Roller

3  KATHARINE ROLLER*
   Complex Litigation Counsel

4  ELIZABETH B. SCOTT*
   Assistant Attorney General

5  Office of the Illinois Attorney General
   115 LaSalle Street

6  Chicago, IL 60603
   (773) 519-1842

7  Katharine.roller@ilag.gov

8  *Attorneys for the State of Illinois*

9

10

11

12 **AARON M. FREY**
   Attorney General of Maine

13 By: */s/ Caleb Elwell*

14 CALEB E. ELWELL*
   Assistant Attorney General

15 Office of the Maine Attorney General
   6 State House Station

16 Augusta, ME 04333
   (207) 626-8545

17 Caleb.elwell@maine.gov

18 *Attorneys for the State of Maine*

19

20

21

22

23

24

25

26

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. TRAVIS MAYO*
General Counsel
TAYLOR PAYNE*
Chief Deputy General Counsel
LAURA C. TIPTON*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: /s/ *Steven J. Goldstein*
STEVEN J. GOLDSTEIN*
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

COMPLAINT – No.                    36                    ATTORNEY GENERAL OF WASHINGTON
                                                         Environmental Protection Division
                                                         800 Fifth Avenue STE 2000
                                                         Seattle, WA 98104
                                                         206-464-7744

1 | **ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of
2 | Massachusetts

3 | By: */s/ Amy Laura Cahn*
AMY LAURA CAHN*
4 | MOLLY TEAGUE*
*Special Assistant Attorneys General*
5 | TERRENCE VALES*
*Assistant Attorney General*
6 | KATHERINE DIRKS*
*Chief State Trial Counsel*
7 | VANESSA ARSLANIAN*
*State Trial Counsel*
8 | One Ashburton Place
Boston, MA 02108
9 | (617) 963-2277
amy.laura.cahn@mass.gov
10 | molly.teague@mass.gov
terrence.vales@mass.gov
11 | katherine.dirks@mass.gov
vanessa.arslanian@mass.gov
12 |
*Attorneys for the Commonwealth of*
13 | *Massachusetts*

14 |

15 | **MATTHEW J. PLATKIN**
Attorney General of New Jersey

16 | By: */s/ Daniel Resler*
DANIEL RESLER*
17 | LAUREN E. VAN DRIESEN*
JACK VENTURA*
18 | *Deputy Attorneys General*
Office of the Attorney General
19 | 33 Washington Street, Ninth Floor
Newark, NJ 07101
20 | (973) 648-4726
Daniel.Resler@law.njoag.gov
21 |
*Counsel for the State of New Jersey*
22 |

23 |

24 |

25 |

26 |

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
NEIL GIOVANATTI*
POLLY SYNK*
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Attorneys for the State of Michigan*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ J. Spenser Lotz*
J. SPENSER LOTZ*
Assistant Attorney General
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Attorneys for the State of New Mexico*

COMPLAINT – No.                    37

| | | |
|---|---|---|
| 1 | **LETITIA JAMES**<br>Attorney General of New York | **JEFF JACKSON**<br>Attorney General of North Carolina |
| 2 | | |
| | By: */s/ Matthew Eisenson* | **LAURA HOWARD** |
| 3 | MATTHEW EISENSON*<br>KELSEA SUAREZ* | Chief Deputy Attorney General |
| 4 | *Assistant Attorneys General*<br>Environmental Protection Bureau | |
| 5 | Office of the Attorney General<br>28 Liberty Street, 19th Floor | By: /s/ Daniel T. Wilkes<br>DANIEL T. WILKES* |
| 6 | New York, NY 10005<br>(212) 416-8481 | *Assistant Deputy Attorney General*<br>North Carolina Department of Justice |
| 7 | matthew.eisenson@ag.ny.gov | PO Box 629<br>Raleigh, NC 27602 |
| 8 | *Attorneys for the State of New York* | 919-716-6415<br>dwilkes@ncdoj.gov |
| 9 | | |
| 10 | | *Attorneys for the State of North Carolina* |
| 11 | **DAN RAYFIELD**<br>Attorney General of Oregon | **MICHAEL A. BRAYMER**<br>Chief Counsel<br>Department of Environmental Protection |
| 12 | By: */s/ Coby Howell* | |
| 13 | COBY HOWELL*<br>Senior Assistant Attorney General | By: */s/ Michael J. Heilman*<br>MICHAEL J. HEILMAN* |
| 14 | Oregon Department of Justice<br>100 SW Market St. | Litigation Coordinator<br>Department of Environmental Protection Office |
| 15 | Portland, OR 97201<br>Telephone: (971) 283-8657 | of Chief Counsel<br>400 Waterfront Drive |
| 16 | Fax: (971) 673-5000<br>Email: Coby.Howell@doj.oregon.gov | Pittsburgh, PA 15222<br>Phone: 412-442-4241 |
| 17 | | Email: mheilman@pa.gov |
| 18 | *Attorneys for the State of Oregon* | *Attorney for JESSICA SHIRLEY, Chair of the*<br>*Pennsylvania Energy Development Authority* |
| 19 | **PETER F. NERONHA**<br>Attorney General of Rhode Island | **CHARITY R. CLARK**<br>Attorney General of Vermont |
| 20 | | |
| 21 | By: */s/ Nicholas M. Vaz*<br>NICHOLAS M. VAZ* | By:    */s/ Jonathan T. Rose*<br>JONATHAN T. ROSE* |
| 22 | Special Assistant Attorney General<br>Office of the Attorney General | Solicitor General<br>109 State Street |
| 23 | Environment and Energy Unit Chief<br>150 South Main Street | Montpelier, VT 05609<br>(802) 828-3171 |
| 24 | Providence, Rhode Island 02903<br>(401) 274-4400 ext. 2297 | jonathan.rose@vermont.gov |
| 25 | nvaz@riag.ri.gov | *Attorneys for the State of Vermont* |
| 26 | *Attorneys for the State of Rhode Island* | |

1    **WISCONSIN ECONOMIC**
       **DEVELOPMENT CORPORATION**

2    Jennifer H. Campbell
       Chief Legal Officer

3

4    By: */s/ Jennifer H. Campbell*
       JENNIFER H. CAMPBELL*
       2352 S. Park St., Suite 303

5    Madison, WI 53713
       (608) 210-6811

6    jennifer.campbell@wedc.org

7    *Attorney for Wisconsin Economic*
       *Development Corporation*

8

9    *pro hac vice application forthcoming

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT – No.                39             ATTORNEY GENERAL OF WASHINGTON
                                               Environmental Protection Division
                                               800 Fifth Avenue STE 2000
                                                   Seattle, WA 98104
                                                     206-464-7744

EXHIBIT A



## OFFICE OF MISSION SUPPORT
### WASHINGTON, D.C. 20460

August 7, 2025

**MEMORANDUM**

**SUBJECT:**    Termination of EPA Assistance Agreement 5H-84093001 under 2 CFR 200.340

**FROM:**    Devon Brown, EPA Award Official

**TO:**    Amy Wheeless, Federal Policy and Program Alignment Manager
Washington State Department Of Commerce

The purpose of this communication is to notify you that, pursuant to the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21 (July 4, 2025), the U.S. Environmental Protection Agency (EPA) is hereby terminating Assistance Agreement No. 5H-84093001 awarded to Washington State Department Of Commerce. Section 60002 of OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134. The repeal of the grant appropriations in CAA 134(a)(1)-(3), coupled with the rescission of the administrative appropriation in section 134(a)(4), effectively and completely terminated the statutory authority and all appropriations related to Solar for All. As both the grant appropriations and the EPA's administrative cost appropriation are rescinded, the Agency no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these grants or of Solar for All. Thus, any attempt to continue the program's administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible. The EPA has been weighing options for the future of the Solar for All program and has made the decision to terminate the SFA program and existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients. Congress has made its intent clear—via a repeal of the statutory authorization and all appropriated funding for the program and the administrative burdens of implementing and overseeing the program—that the SFA program is no longer to operate.

The EPA recognizes that program participants may have begun to rely on funds made available through the Solar for All program and have in some instances made preliminary budgets, projections, outlays, and staffing decisions. Due to the early nature of such expenditures, we expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants and discussed below.

The process for closeout is generally outlined in 2 CFR 200.344. EPA is clarifying what reports are required and what reports are waived below. Other requirements are still in effect if applicable to your grant.

EPA is requiring the following closeout reports due within 120 days of closeout (2 CFR 200.344a:)
- Final Federal Financial Report, SF-425
- Final Technical Report
- Other programmatic reports identified in your terms and conditions

As part of this termination, EPA is waiving the following closeout reports:
- Property Report, SF-428
- Final Minority Business Enterprise/Woman Business Enterprise Utilization Under Federal Grants and Cooperative Agreements, EPA Form 5700-52A

The recipient may request payment from the Automated Standard Application Payments (ASAP) system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan. Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g).

Also, per 2 CFR 200.472, a recipient may use grant funds to properly closeout their grant including reasonable and necessary costs that might occur after the date of this memo. If the recipient drew down funds from ASAP for costs beyond the termination date or for costs that exceed the amount necessary to properly closeout their grant, the recipient must contact RTPFC at rtpfc-grants@epa.gov for instructions on how to return the excess funds.

The EPA Grants Management Office will issue an amendment to the agreement to document the termination.

If you wish to dispute this termination decision, the Disputes Decision Official (DDO), molina.michael@epa.gov, must receive the Dispute no later than 30 calendar days from the date this termination notice is electronically sent to you. Disputes must be sent electronically by email to the DDO, with a copy to the EPA Award Official, brown.devon@epa.gov within the 30-day period stated above. The Dispute submitted to the DDO must include: (1) A copy of the disputed Agency Decision; (2) A detailed statement of the specific legal and factual grounds for the Dispute, including copies of any supporting documents; (3) The specific remedy or relief you seek under the Dispute; and (4) The name and contact information, including email address, of your designated point of contact for the Dispute. *See* 2 CFR 1500.15

The requirements on post-closeout adjustments and continuing responsibilities, including audit and record retention requirements, at 2 CFR 200.345 remain in effect.

cc: Alison Hanlon, EPA Grant Specialist
    Vineet Pandharpurkar, EPA Project Officer
    Nora Hawkins, Grantee Program Manager

2

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

State of Arizona, et al.

**(b)** County of Residence of First Listed Plaintiff   Maricopa
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
C. L. Junine So, Assistant Attorney General
Office of Attorney General of Washington
800 Fifth Ave., Ste. 2000, Seattle, WA 98104

## DEFENDANTS

U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 835 Patent - Abbreviated | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | Act of 2016 | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | ☒ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Administrative Procedure Act, 5 U.S.C. § 702
Brief description of cause:
APA and constitutional challenge to unlawful termination of EPA's Solar for All program.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:

JUDGE _____ DOCKET NUMBER _____

DATE: October 16, 2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ C. L. Junine So

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington ▾

| | |
|---|---|
| State of Arizona, et al. | ) <br> ) <br> ) <br> ) |
| _____ <br> *Plaintiff(s)* | ) <br> ) |
| v. | ) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; <br> and LEE ZELDIN, in his official capacity as <br> Administrator of the U.S. Environmental <br> Protection Agency <br> _____ <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    U.S. ENVIRONMENTAL PROTECTION AGENCY
Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Junine So, Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA  98104

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*


                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington  ▼

| | |
|---|---|
| State of Arizona, et al. | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency | ) |
| _Defendant(s)_ | ) |

Civil Action No.

### SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_     LEE ZELDIN
Administrator of the U.S. Environmental Protection Agency
Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Junine So, Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA  98104

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**
***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____               _____
                                                    *Server's signature*

                                          _____
                                                    *Printed name and title*

                                          _____
                                                    *Server's address*

Additional information regarding attempted service, etc: